IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM LORD PAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:11-cv-416-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On November 18, 2008, Mr. William Lord Payne ("Plaintiff" or "Payne") applied

for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C.

§§ 401 *et seq*. and for supplemental security income benefits under Title XVI of the

Social Security Act, 42 U.S.C. §§ 1381 *et seq*. alleging disability beginning March 1,

2008.  (Tr. 63-64).  The applications were denied and, upon timely request, Payne

appeared before an Administrative Law Judge ("ALJ") on June 17, 2010.  The ALJ

rendered an opinion denying Payne's applications on November 24, 2010.  (Tr. 16-28).

The Appeals Council rejected review on April 21, 2011 (Tr. 1-5); thereby making the

ALJ's decision the final decision of the Commissioner of Social Security

("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The

---

[1] Pursuant to the Social Security Independence and program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred tot he Commissioner of Social Security.

Court has jurisdiction over this lawsuit pursuant to 42 U.S.C. § 405(g) and the parties consent to the undersigned rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  For the reasons that follow, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Payne seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits and supplemental security income.  United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405 (2006).  The Court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id.*

## II. BACKGROUND

Payne was born on March 24, 1973, and has a high school education.  (Tr. 38). Payne has had a number of jobs including, but not limited to; construction worker I, construction worker II, skidder operator, peanut sampler, automobile detailer, industrial cleaner, forklift driver, truck driver, material handler, tower climber, roofer, and escort vehicle driver.  (Tr. 36-62, 227, 264).

The ALJ found Payne met the insured status requirements, was not engaged in substantial gainful activity, and to have the following severe impairments: "alcohol dependence, depression, diverticulosis, posttraumatic stress disorder, status post

cholecystectomy, small bowel illeus, and hiatial hernia." (Tr.18-19). The ALJ also found that "[t]he claimant's benign prostatic hypertrophy, status post appendectomy, and kidney stone are nonsevere impairments because they do not cause limitations that have more than a minimal effect on his capacity to perform basic work activities." (Tr. 19). Despite the severe impairments the ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d))." *Id.*

Payne submitted medical records to the ALJ beginning in February 2008, wherein he presented to Dr. William McLaughlin, M.D., with abdominal pain and diarrhea. (Tr. 20-21, 452-54). Payne was diagnosed with right lower quadrant and left upper quadrant abdominal pain, diarrhea, weight loss and cholecystectomy. *Id*. Later that same month Payne was diagnosed as suffering from diarrhea, alcohol intoxication and abdominal pain. *Id*. Payne tested positive for benzodiazepines and had an elevated alcohol level. *Id*. An "abdominal CT report included an impression of prostatic enlargement and diverticulosis." (Tr. 21, 341). In March of 2008, Payne was seen for renewed complaints of abdominal pain. (Tr. 21).

Payne was treated on multiple occasions in July 2008 wherein providers assessed Payne with diverticulosis (small pouches in the lining of the intestine) and some reoccurring evidence of diverticulitis (inflamation of the pouches). (Tr. 319-20, 530-34).

Another CT scan showed a moderate hiatal herina (Tr. 508-14), but that the diverticulitis found earlier in the month was no longer present. (Tr. 515). Payne received conservative management wherein Dr. Miguel R. Arguedas, M.D., recommended to Dr. Leslie Harris Jr., M.D., that "[w]e do not plan on any EGD or colonoscopy at this time." August 19, 2008, Payne had another CT done for abdominal pain and the report indicated possible Crohn's disease or "infectious colitis, and mild diverticulosis of the distal descending colon with no evidence of diverticulitis." (Tr. 21). In November, 2008, Payne was hospitalized for a depressive episode. (Tr. 21).

As part of a psychological evaluation on January 8, 2009, Fernelle L. Warren, Ph.D., "diagnosed the claimant with Major Depressive Disorder, moderate, recurrent, alcohol dependency, Post Traumatic Stress Disorder, stomach infection, appendectomy, and gallbladder" (Tr. 22). In July 2009, Payne went to the Troy Medical Center with abdominal pain which he was again diagnosed diverticulitis. (Tr. 406-09). Later that same month he was diagnosed with small bowel obstruction (ileus) and persistent abdominal pain after another CT scan. (Tr. 367). Dr. Paul Hutchinson, M.D., found that the CT scan of the abdomen of Payne was unremarkable. (Tr. 21). "[C]onsultation notes indicated a three-week history of abdominal pain and the diagnoses were abdominal pain, chronic diarrhea and Gastroesophageal Reflux Disease." *Id*. In September 2009, Payne again sought treatment for abdominal pain wherein a "CT report included a diagnosis of diverticulosis." (Tr. 21, 395-97). In November 2009, Payne presented with epigastric

pain at which time a CT scan showed a small hiatal hernia but was otherwise normal.  (Tr. 443-44).  A few days later, Payne reported to the Dale Medical Center with complaints of pain, which was diagnosed with constipation, abdominal pain, and gastritis (inflammation of the lining of the stomach).  (Tr. 349-50).  In December 2009, Payne reported back pain and leg numbness, completed a lumbar spine X-ray which reported mild scoliosis, very mild osteoarthritic changes, "[n]o compression fracture, subluxation or intervertebral narrowing."  (Tr. 21).  It was noted a "prominence of feces and gas within the intestine" and no other significant findings.  *Id*.

In February 2010, Payne went to Troy Medical Center for abdominal pain with a CT scan showing mild diverticulosis and no diverticulitis.  (Tr. 640-45).  In April 2010, Payne returned to Troy Medical Center, again with complaints of abdominal pain which was diagnosed as gastroenteritis.  (Tr. 632-33).  In May 2010, Payne complained of nausea, vomiting, diarrhea and abdominal pain which was diagnosed as diverticulitis and gastorenteritis.  (Tr. 22).

Payne's medical history regarding his alcohol consumption is intermingled throughout the treatment history of the other medical ailments but, in light of the special treatment by the ALJ, this portion of the medical history is reviewed separately by this Court.  In February 2008, the general medical history of the show alcohol intoxication and positive urine tests for benzodiapepine.  (Tr. 458, 471).  In November 2008, Payne went to Crenshaw Community Hospital for treatment for alcohol abuse.  (Tr. 576-77). Payne

followed this treatment through an outpatient program at Eastern Central Mental Health-Mental Retardation, Inc. *Id.* To treat his alcohol abuse the physician prescribed Antabuse for Payne, a medication which interferes with the metabolism of alcohol. (Tr. 539-41). On November 25, 2008, Payne told his treating physician he quit using alcohol. The day prior, November 24, 2008, Payne stated on his Disability Determination Service questionnaire that during the week he drank a "six pack a day," on the weekends he drank a "12 pack," and that he drinks "all weekend long." (Tr. 247). Payne acknowledges drinking adversely affects his health and that he doesn't eat well. *Id*. Payne even reports having participated in the treatment program less then a month prior. (Tr. 248).

In January 2009, Payne saw Dr. Warren, Ph.D, and reported "drinking 3 cases of beer and a half gallon of Vodka daily." (Tr. 591). While Payne concedes he admitted himself into Crenshaw County Hospital and East Central Mental Health Center for alcohol treatment, with the prescription of Antabuse, "he reports of not taking any medications." *Id*. Dr. Warren concluded Payne suffers from alcohol dependency, amongst other things. (Tr. 592). In March 16, 2009, medical notes indicate that Payne was "seeking employment" and that he denies alcohol consumption since November 2008. Progress notes on March 26, 2009, a short ten days later, indicate that Payne "has been arrested for DUI." (Tr. 656, 653). Furthermore, lab tests in November 2009 were positive for barbiturates. (Tr. 440).

On February 6, 2009, Dr. Steven D. Dobbs, Ph.D., a State agency psychologist

noted that "[claimant] currently reports drinking 36 beers and a half gallon of vodka per day and has an MDI of ETOH Dependence." (medical diagnosis of alcohol dependence) (Tr. 621).  Dr. Dobbs further states that as a result of his alcohol dependence, "[claimant] wouldn't be able to sustain attention/concentration for minimal periods to consistently complete RRT's."  *Id*.  As part of the mental evaluation regarding listings 12.04 and 12.06, separate from the alcohol findings, Dr. Dobbs states that Payne is "able to understand and remember simple and detailed but not complex instructions," "sustain attention/concentration for two hour periods to complete a regular workday at an acceptable pace and attendance schedule," and that he is "[a]ble to interact appropriately in casual settings and respond appropriately to constructive instructions."  (Tr. 629).

### III. STANDARD OF REVIEW

The Court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Hand v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it supported by substantial evidence."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence). The Court must find the Commissioner's decision conclusive "if it is supported by

substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185

F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.

1997)).

Substantial evidence is more than a scintilla – i.e., the evidence must do more than

merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion.

*Hand v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*,

402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) and *MacGregor v.*

*Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d at 1560 (citing *Walden v.*

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401, 91 S.Ct.

at 1427).

If the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the court would have reached a contrary result as finder of fact,

and even if the court finds that the evidence preponderates against the Commissioner's

decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court

must view the record as a whole, taking into account evidence favorable as well as

unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d

129,131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the

decision applies incorrect law, or if the decision fails to provide the district court with

sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health and Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted).  There is no presumption that the Secretary's conclusions of law are valid.  *Id.; Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## IV. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  Despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir.

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes.  *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1)   Is the person presently unemployed?
(2)   Is the person's impairment(s) severe?
(3)   Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[4]
(4)   Is the person unable to perform his or her former occupation?
(5)   Is the person unable to perform any other work within the economy?
An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative

---

[4] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[5] ("grids") or hear testimony from a Vocational Expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Id.* at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id.*

## V. STATEMENT OF THE ISSUES

Plaintiff alleges the ALJ committed two errors.  (Pl. Br. at 5).  First, Plaintiff argues "the ALJ erred in finding Mr. Payne's alcoholism is a contributing factor material to an otherwise favorable disability determination."  *Id.*  Second, Plaintiff argues "there is absolutely no support for the ALJ's RFC assessment as the record is devoid of any physical RFC assessments from any physicians whatsoever."  *Id.*  The issues and arguments Payne raises turn upon this Court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622, 624-25 (11th Cir. 1987).

## VI. DISCUSSION AND ANALYSIS

**The ALJ correctly treated Payne's alcoholism as a contributing factor.**

Plaintiff generally claims that the ALJ erred in denying benefits based on the materiality of alcohol and drug abuse.  Specifically, Payne argues that his other illnesses render him disabled regardless of his alcoholism, and should not be considered.  The argument is specious and analysis will show that this is incorrect and substantial evidence supports the ALJ's conclusion that the plaintiff's other ailments are not disabling.

On March 29, 1996 the Social Security Act was amended to direct the termination or denial of benefits to individuals for whom alcoholism is a contributing factor material to a finding of disability. *Englert v. Apfel*, 1999 WL 1289472 at *8, n.3 (M.D. Fla. June 16, 1999) (citing Public Law No. 104-121, 110 Stat. 8427 (1996)). This change acted to deny a claimant's claim where there is a finding that alcoholism or drug abuse plays a contributing factor material to the Commissioner's finding that the claimant is disabled. *Id*. The court stated in *Englert*;

> If a claimant is disabled, but has evidence of drug addiction or alcoholism, the ALJ must determine whether the drug addiction or alcoholism is a contributing factor material to the determination of the finding of disability. 20 C.F.R. § 404.1535(a). In making this determination, the ALJ considers whether the claimant is disabled without the drug addiction or alcoholism. 20 C.F.R. § 404.1535(b)(1). The ALJ considers which of the disabling conditions would remain should the claimant stop using drugs or alcohol. 20 C.F .R. § 404.1535(b)(2). If the ALJ determines that the claimant's remaining limitations would not be disabling, the ALJ will find that the drug usage or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(b)(2)(i). Drugs and alcohol are a contributing factor material to the determination of disability when they form the exclusive basis for the finding of disability. If there are other grounds for finding the claimant disabled, then drugs and alcohol, are not a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(b)(2)(ii).

*Englert*, 1999 WL 1289472, at *7. *See also*, *Doughty v. Apfel*, 245 F.3d 1274, 1279 (11th Cir. 2001) (citing 20 C.F.R. § 404.1535) (The court must determine whether the alcohol addiction is a contributing factor material to the determination of disability). "The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of a disability (the "materiality determination") is whether

the claimant would still be found disabled if he stopped using drugs or alcohol."

*Doughty*, at 1279. (citing 20 C.F.R. § 404.1535(b)(1)).

The Eleventh Circuit looked to this law in *Doughty v. Apfel*, and held, as a mater
of first impression, that the claimant bears the burden of proving that his alcoholism or
drug addiction is not a contributing factor material to his or her disability determination.
*Doughty*, at 1280. (citing *Brown v. Apfel*, 192 F.2d 492 (5th Cir. 1999)).  The Eleventh
Circuit noted:

> [the claimant] is the party best suited to demonstrate whether she would still
> be disabled in the absence of drug or alcohol addiction.  We are at a loss to
> discern how the Commissioner is supposed to make such a showing, the key
> evidence for which will be available most readily to [the claimant].

*Id*.  The Court noted that there is no additional duty on the ALJ to seek a consultant's
opinion when making a materiality determination.  *Id*.

The ALJ is to determine which of the claimant's physical and mental limitations
would remain if the claimant stopped using drugs or alcohol.  Then the ALJ must
determine whether any of the claimant's remaining limitations would be disabling.  20
C.F.R. § 404.1535(b)(2), 416.935(b)(2).  If the ALJ determines that the remaining
limitations would not be disabling, the ALJ must find that the claimant's "drug addiction
or alcoholism is a contributing factor material to the determination of disability."   20
C.F.R. § 404.1535(b)(2)(i), 416.935(b)(2)(i).  However, if the ALJ determines that the
remaining limitations would be disabling, the ALJ must conclude that the claimant is
"disabled independent of [his or her] drug addiction or alcoholism and ...[his or her] drug

addiction or alcoholism is not a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

In *Pearson v. Astrue*, the Eleventh Circuit rejected the arguments that the ALJ applied an erroneous legal standard to conclude that Pearson's alcohol abuse materially contributed to his mental impairments and barred him from receiving social security benefits. *Pearson v. Astrue*, 271 Fed. Appx. 979, 980 (11th Cir. 2008). The Court found differently in that substantial evidence supported the finding by the ALJ that the claimant's continuing alcohol abuse over the years was a contributing factor to his disability. *Id*. at 981. The Court also reiterated that an application for Social Security "shall not be considered to be disabled . . . if alcoholism . . . would be a contributing factor material to the Commissioner's determination that the individual is disabled." *Id*. (citing 42 U.S.C. § 423(d)(2)).

The ALJ's approach in this case is wholly consistent with the law. After finding that Payne met the insured status requirements and had not been engaged in substantial gainful activity the ALJ established the severe impairments include "alcohol dependence, depression, diverticulosis, posttraumantic stress disorder, status post cholecystectomy, small bowel illeus, and hiatal hernia." (Tr. 18-19). In the very next portion of the analysis the ALJ states that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (Tr. 19). The ALJ also notes that "[n]o treating or examining source has indicated findings that

would satisfy the severity requirements of any listed impairment." *Id.*  The ALJ looked to

the listings for digestive system and mental disorders, the specific requirements of each,

Payne's daily living activities, social functioning, concentration, persistence or pace, and

lack of decompensation episodes. (Tr. 19-20).  In all of these only marked or moderate

difficulties exist, which is not nearly sufficient to rise to the level of disability.  (Tr. 20).

Based on his analysis, the ALJ then established the residual functional capacity (RFC) to

perform medium work, with exceptions.  *Id.*  The ALJ made a thorough examination of

the medical reports, from early 2008 through 2010,  as part of the justification for the

RFC, as well as considering the medical expert, Dr. Calvin Johns, M.D., who testified at

the hearing that the claimant did not meet or equal a listing.  *Id.*  At the conclusion of the

RFC, the ALJ states "[t]he undersigned finds that the claimant is unable to perform any

work activity due to the materiality of drug and alcohol abuse."  (Tr. 22).

 After concluding that Payne was not disabled and establishing his RFC the ALJ

stated "[c]onsidering the claimant's age, education, work experience, and residual

functional capacity based on all of the impairments, *including the substance use disorder*,

there are no jobs that exist in significant numbers in the national economy that the

claimant can perform." *Id*. (emphasis added).  However, after looking to the vocational

expert's testimony the ALJ stated that "[i]f the claimant stopped the substance use, the

claimant would not have an impairment or combination of impairments that meets or

medically equals any of the impairments listed."  (Tr. 24).  The ALJ also states:

> If the claimant stopped the substance use, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to product the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

(Tr. 26).

The ALJ addressed the evidence of continued use and concluded that "the claimant's allegations of absence of alcohol abuse is not consistent with the evidence; and since the evidence indicates improvement during sobriety; thus drug and alcohol abuse is a material factor in this claim, thereby concluding that claimant's allegations are not debilitating in the absence of drug and alcohol abuse." (Tr. 26). The evidence shows this Court that the ALJ was correct in his credibility finding when Payne acknowledges in a social security questionnaire that he still drank six to twelve beers a day on November 24, 2008, and then on the next day, as part of his progress notes in alcohol treatment, insists that he is not drinking. (Tr. 247-48, 548-50). The record also shows on March 16, 2009, Payne denied alcohol use since November 2008, while he was seeking employment. However, on March 26, 2009, the notes indicate Payne had been arrested for driving under the influence. (Tr. 653-56). The Court is want to find that any medical care provider could accurately diagnose Payne with such blatant instances of dishonesty; and therefore, finds that the ALJ's decision was supported by substantial evidence despite the Plaintiff's claims that "[t]he evidence as a whole does not suggest that Mr. Payne's alcohol use has caused or exacerbated his physical impairments." To the contrary, the

Court finds that the ALJ was thorough in his analysis of the claimant's case and that the

ALJ's determination that Payne's consumption of alcohol is a contributing factor material

to his disability is supported by substantial evidence.

### The ALJ's Residual Functional Capacity assessment is supported by substantial evidence.

A residual functional capacity (RFC) assessment is used to determine the

claimants' capacity to do as much as possibly despite their limitations. *See* 20 C.F.R. §

404.1545(a)(1) (2010). An RFC assessment will be made based on all relevant evidence

in the case record. *Id.*; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "The

determination of residual functional capacity is within the authority of the ALJ and the

assessment should be based upon all the relevant evidence of a claimant's remaining

ability to do work despite her impairments." *Beech v Apfel*, 100 F.Supp.2d 1323, 1331

(S.D. Ala. 2000) (citing 20 CFR § 404.1546, *Lewis v. Callahan*, 125 F.3d at 1440). At an

ALJ hearing, "the [ALJ] is responsible for assessing [the claimant's] residual functional

capacity." 20 C.F.R. § 404.1546(c) (2010). Whereas the claimant is "responsible for

providing the evidence [the ALJ] will use to make a finding about [the claimant's]

residual functional capacity." 20 C.F.R. § 404.1545(a)(3) (2010). The ALJ is

"responsible for developing [the claimant's] complete medical history, including

arranging for a consultative examination(s) if necessary, and making every reasonable

effort to help [the claimant] get medical reports from [their] own medical sources. *Id.;*

*Holladay v. Bowen,*848 F.2d 1206, 1209-10 (11th Cir. 1988) (The ALJ is not required to

order a consultative examination unless the record establishes it is necessary to render a fair decision).  The ALJ's finding must be supported by substantial evidence.  *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005).  (Citations omitted).  "[T]he law of this Circuit does not require an RFC from a physician."  *Langley v. Astrue,* 777 F.Supp.2d 1250, 1257-58 (N.D. Ala. 2011).  Moreover, the court in *Langley* stated that to do otherwise "attempt[s] to place the burden of proving the claimant's RFC on the Commissioner at step five" and this shifting of the burden is "inconsistent with the Commissioner's regulations, Supreme Court precedent and unpublished decisions in this Circuit." *Id.* at 1258-60. (Citations omitted.).

The ALJ found that Payne has the RFC "to perform medium work" with exceptions.  (Tr. 20).  The ALJ first addressed the issue of the RFC when establishing the procedural steps that must be accomplished throughout the entirety of the opinion.  (Tr. 16-18).  After finding that Payne suffers from alcohol dependence, depression, diverticulosis, posttraumatic stress disorder, status post cholecystectomy, small bowel illeus, and hiatal hernia, the ALJ found that Payne's benign prostatic hypertrophy, status post appendectomy, and kidney stones are nonsevere impairments because they do not have more than a minimal effect on his capacity to perform work.  (Tr. 19).

At this point, the ALJ found Payne has the RFC to perform "medium work as defined in 20 CFR 404.1567(c) and 416.967(c)" with exceptions.  (Tr. 20).  The ALJ then reviewed all medical evidence provided by Payne, which were taken into consideration by

the ALJ in reaching the RFC.  (Tr. 20-22).  The ALJ established through the record that Payne does not have an impairment or combination of impairments under the listings or one that medically equals a listing.  (Tr. 18-22).  While the ALJ spends time in his analysis addressing the specific requirements of digestive system disorders as well as mental health disorders he notes that "*[n]o* treating or examining source has indicated findings that would satisfy the severity requirements of *any* listed impairment. *Id*. (emphasis added).  The subsequent finding that Payne's alcoholism is a contributing factor material to the determination of disability, in no way negates the fact that there is substantial evidence in the record to support the ALJ's RFC assessment and its validity to the overall findings.

## V. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, ORDERED that the decision of the Commissioner is AFFIRMED.  A separate judgment will be entered.

DONE this 10th day of April, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE